# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jodi A. Fowler,             :
                 Petitioner     :
                                  :
         v.                    :    No. 1269 C.D. 2017
                                  :    Submitted:  March 16, 2018
Unemployment Compensation    :
Board of Review,              :
                 Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  May 15, 2018**


       Petitioner Jodi A. Fowler (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board).  The Board affirmed the Unemployment Compensation Referee's (Referee) decision, denying Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1]  For the reasons set forth below, we affirm.

       Claimant filed for unemployment compensation benefits subsequent to her discharge from employment with JM Rapp, LLC (Employer).  The Scranton UC

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Service Center (Service Center) determined that Claimant was eligible for unemployment compensation benefits. (Certified Record (C.R.), Item No. 5.) Employer appealed the Service Center's determination, and a Referee conducted a hearing. Claimant testified on her own behalf and presented the testimony of her husband, Kevin Hengst (Hengst), who was her boyfriend at the time of her termination. Jeffrey Rapp (Rapp), owner of Employer, testified on Employer's behalf.

Rapp testified that Claimant worked full-time as a Dispatcher for Employer. (C.R., Item No. 9 at 5.) Claimant began working in 2014, with her last day being March 13, 2017. (*Id.*) Rapp explained that Claimant's duties included taking phone calls from drivers at night or on the weekends when issues related to dispatch arose. (*Id.* at 6-7.) On March 11, 2017, one of Employer's drivers contacted Claimant early in the morning. (*Id.* at 7.) The driver received a text message response from Claimant "telling him to break out of calling at 5:00 in the morn-, in the F-ing morning." (*Id.*) According to Rapp, Hengst sent the text from Claimant's phone. (*Id.*) Later that day, another driver attempted to contact Claimant and received "the same type of inappropriate text message" from Hengst. (*Id.*)

Rapp stated that Claimant previously shared her personal phone number with the drivers in case they had an issue with something related to dispatch. (*Id.*) Employer permitted Claimant to track her time spent answering these types of phone calls so she could be compensated. (*Id.*) On March 13, 2017, Rapp contacted Claimant at the office and informed her that the texts sent from her phone were inappropriate. (*Id.* at 8.) He instructed her to go home and have a conversation with Hengst about the texts. (*Id.*) Rapp further instructed Claimant to call him at the end

2

of the day about what she intended on doing. (*Id.*) Rapp stated that Claimant went home, but she never called him back. (*Id.*)

Rapp testified that on March 15, 2017, he received a note from Claimant's doctor stating that Claimant would not return to work until March 20, 2017. (*Id.*) Rapp stated he had still not heard back from Claimant at this point. (*Id.*) Rapp testified that he later received a request for leave under the Family and Medical Leave Act[2] (FMLA), through which Claimant sought a six-week leave of absence from work. (*Id.*) Rapp informed her that FMLA did not apply because Employer had less than 50 employees. (*Id.*) Rapp stated that he received a text from Claimant on March 22, 2017, stating that she was waiting on Employer's reply about medical leave, that she went to counseling, and that she was going to return her keys the next day. (*Id.* at 8-9.) Rapp stated that if Claimant would have gone home on March 13, 2017, straightened things out with her boyfriend, and returned to work, she would still be employed. (*Id.* at 9.)

At this point in the hearing, the Referee remarked that the Service Center rendered its determination under Section 402(e) of the Law,[3] relating to willful misconduct. (*Id.*) The Notice of Hearing, however, listed Section 402(b) of the Law, relating to voluntary discharge, as the pertinent issue. (*Id.*) Accordingly, the Referee sought permission from both parties to consider both sections in making her decision. (*Id.* at 9-10.) Both parties consented. (*Id.*)

Claimant testified that March 13, 2017, was her last day of employment because Employer told her to leave. (*Id.* at 11.) She reiterated that Employer sent her home that day to discuss the text messages with Hengst and to consider whether

---

[2] 29 U.S.C. §§ 2601-2654.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

she still wanted to work for Employer. (*Id.*) Claimant disputed the threatening nature of the texts. (*Id.*) Claimant testified that she sent Employer a text on March 13, 2017, and she left a voicemail when Employer did not reply. (*Id.*) She informed Employer that she was "sick to her stomach and upset about being sent home" and that she would not be in the next day. (*Id.*)

Claimant testified that she texted Employer on March 14, 2017, to inform him that she was still feeling sick. (*Id.* at 12.) She stated that Hengst tried to call Employer, but Employer hung up on him. (*Id.*) Claimant testified that she did not call Employer or want to speak to him personally because of her nerves and Employer's intimidating nature. (*Id.*) On March 22, 2017, Claimant texted Employer and informed him that she was still waiting on his reply about her medical leave request and that she had her first counseling session. (*Id.*) She stated she also told Employer that she would return her keys. (*Id.*) Claimant testified that Employer texted her on March 20, 2017, stating that she could pick up her paycheck after she turned in her keys. (*Id.*) She said that she believed Employer was terminating her employment because she had to turn in the keys to get her check. (*Id.* at 13.) Claimant stated that she did not return to work on March 20, 2017, because her doctor intended to file for FMLA leave on Claimant's behalf. (*Id.* at 14.) At that time, Claimant stated she was not aware that Employer was not required to offer FMLA leave. (*Id.*) Claimant noted that although she asked Employer to grant medical leave, she did not provide any documentation to support this request. (*Id.*)

Hengst testified as to whether he sent threatening text messages. He testified as follows:

> [Hengst]: Jodi, the only thing that I sent was when I got woken up at 4:45 AM on a Saturday morning. They should not contact this phone until a decent hour. And I did use, I did use the F-word in the sentence. And I was

4

quite upset because I only got off of work at 2:30 in the morning and got to bed about 3:30. And, yeah, I was quite upset being woken up. And the first – it's not the first time that it happened. One month it happened 61 times, the phone rang 61 times. So that, that – I was quite upset and I did, I did send a text message. Was not threatening, just telling them to call back at a decent time, like, 8:00.

C[laimant]: The text message to Lenny, that did not occur on the same day, correct?

[Hengst]: Oh, yeah. That's correct. It did not occur on the same day. He was, was sending, was sending photos of himself to you and, and I, I thought it was inappropriate and it was, I believe it was the day before that. It wasn't the same day though, 'cause that was the only one that was made that day. And you know, explicit parts of, well, I didn't know. But I didn't care for it. But the other phone call was actually by Jeff Rapp that Saturday morning at 5:30 AM, it was. It was 5:30, 5:31AM and, you know, calling to conduct work business, and you know, I—it's, it's incredible the times that, that the company and these drivers called. It . . .

R[eferee]: Okay.

[Hengst]: It was unbearable at times.

(*Id.* at 16-17.)

In closing, Employer stated that the situation was blown out of proportion and that his company suffered as a result of Claimant leaving. (*Id.* at 18.) Claimant stated that she believed Employer was retaliating because of sexual harassment charges she filed. (*Id.*)

Following the hearing, the Referee issued a decision and denied Claimant unemployment compensation benefits pursuant to Section 402(b) of the Law. In so doing, the Referee made the following relevant findings:

1. The Claimant was last employed full[-]time as a Dispatcher by JM Rapp LLC from 2014 at a final rate of pay of $15.00 an hour until her last day of work on March 13, 2017.

5

2. Due to the nature of her job, during her employment, the Claimant took calls from drivers at home at night and on weekends.

3. The Claimant gave the drivers her personal cell phone number and had the drivers' numbers listed in her cell.

4. The Claimant told the Employer that she was awake at 4:30 AM and that drivers could call after that time.

5. The Employer told the Claimant that she should track her time spent on calls made to her home and turned [sic] it in with her pay sheet in order to be compensated for the time.

6. On March 11, 2017[,] at approximately 5:00 AM, a driver attempted to contact the Claimant at home on her cell phone.

7. [Hengst] sent a text message back to the driver on the Claimant's phone saying not to call at 5:00 AM, using the F-word.

8. [Hengst] sent a similarly worded text message to another driver on or around the same time.

9. On March 13, 2017, the Employer told the Claimant that it was inappropriate for [Hengst] to communicate with the drivers.

10. The Employer told the Claimant if she had an issue with the drivers calling her at home she should have discussed it with him in the office.

11. The Employer instructed the Claimant to go home and straighten out the issue with [Hengst] and to call him back at the end of the day.

12. The Claimant notified the Employer that she would not be into work on March 14, 2017[,] because she was sick to her stomach.

13. On March 15, 2017, the Employer received a faxed doctor's note restricting the Claimant from work until March 17, 2017, indicating that the Claimant was released to work on March 20, 2017 with no restrictions.

14. The Claimant did not return to work on March 20, 2017.

15. The Employer also received a request for a medical leave of absence under the Family [and] Medical Leave Act (FMLA) but as the Employer has less than 50 employees, FMLA is not applicable.

16. The Claimant voluntarily quit her employment.

17. Continuing work was available to the Claimant.

18. The Referee granted the Claimant's request to participate by the telephone in the Referee's hearing.

19. The Notice of Hearing sent to the parties on May 30, 2017 included the Regulations Governing Telephone Hearings with instructions on submitting any documents to be entered or testified from at the hearing to the Referee['s] Office at least five days before the hearing.

20. No documents from either party were submitted to the Referee's Office prior to the hearing.

(C.R., Item No. 11.)

Although the Service Center decided Claimant's eligibility for benefits under Section 402(e) of the Law, the Referee adjudicated the claim under

7

Section 402(b) of the Law based on the testimony presented at the hearing. (*Id.*) The Referee reasoned:

> In this case, both parties agree that the Employer sent that [sic] Claimant home on March 13, 2017 to discuss with [Hengst] why it was inappropriate for him to respond to the drivers contacting the Claimant with work issues. Both parties agree that the Claimant reported off from work on March 14, 2017 because she was sick to her stomach. The Employer credibly testified that he received a doctor's note by fax restricting the Claimant from working through March 17, 2017, allowing the Claimant to return to work with no restrictions on March 20, 2017. The Claimant did not return to work on March 20, 2017 or thereafter. Both parties agree that the Claimant's doctor send [sic] forms to the Employer about leave under the Family [and] Medical Leave Act (FMLA) but FMLA does not apply to the Employer due to its small size.
>
> However, the Claimant asserts that she was discharged by the Employer while the Employer asserts that the Claimant voluntarily quit her employment. Both parties attempted to provide testimony regarding multiple text messages sent back and forth between the parties from March 13, 2017 through March 22, 2017. The Claimant did not return to work on March 20, 2017 or thereafter.

(*Id.*) The Referee further reasoned that, because there was a conflict as to the reason for Claimant's separation, Claimant had the burden to show that the separation was not voluntary. (*Id.*) The Referee concluded that Claimant failed to meet this burden. Instead, Claimant voluntarily quit her employment while continuing work was available to her. The Referee considered whether Claimant established a necessitous and compelling reason for leaving her employment. The Referee concluded that Claimant had not, because she offered no reasons for quitting her employment, and she asserted only that Employer discharged her from her employment. (*Id.*) The Referee, therefore, reversed the Service Center's determination and denied Claimant benefits under Section 402(b) of the Law. (*Id.*)

8

Claimant appealed the Referee's decision to the Board, and the Board affirmed the Referee's decision. (C.R., Item No. 16.) The Board adopted and incorporated the Referee's findings of fact and conclusions of law. (*Id.*) The Board also denied Claimant's request for a remand hearing and for reconsideration of the Board's decision. (*Id.*)

On appeal,[4] Claimant argues that the Board erred in denying her request for a remand hearing and for reconsideration. She also argues that the Referee violated her due process rights by (1) failing to advise Claimant of the opportunity for her to have an in-person hearing and (2) engaging in favoritism towards Employer and bias against her. Claimant does not challenge the merits of the Board's decision.

We first address Claimant's argument that the Board erred in denying her request for a remand hearing and for reconsideration. By Notice of Hearing sent on May 30, 2017, the Board informed Claimant of her responsibility to submit documents to the Referee's office at least five days before the hearing. (C.R., Item No. 8.) Along with the Notice of Hearing, the Board included a document entitled "Important Information About This Hearing," which set forth various regulations governing telephone hearings, including the regulations set forth at 34 Pa. Code §§ 101.130(e) and 101.131(h).[5] As explained by the Referee, those

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] 34 Pa. Code § 101.130(e) provides:
When any testimony will be given from or with the aid of a document not previously distributed to the parties by the tribunal, the party expecting to introduce the document shall deliver it to the tribunal, and the tribunal shall distribute it to each other party and, if known, counsel or authorized agent before or at the

9

regulations require parties to send documents to the Referee five days before the hearing if the party wants to introduce documents into the record or testify from the documents. (C.R., Item No. 9 at 4.) When Claimant testified, she discussed text messages not entered into the record. (*Id.* at 13.) The Referee stopped her and again explained that testimony from documents is permitted only if the documents were entered into the record five days before the hearing. (*Id.*) This dialogue followed:

> C[laimant]: Actually, actually I attempted to send it to you 10 days ago. And I had the, the email address, because of it being case sensitive, I sent it incorrectly. I actually sent it to you yesterday.
>
> R[eferee]: Well, if you, if you sent it to my office yesterday, the clerk would have printed it out and given it to me. So, and again, it had to be 5[]days before the hearing.
>
> C[laimant]: I know. I know and that's a mistake on my part. It did not have the case sensitive. And I realized that and that's why I sent it to you yesterday again.
>
> R[eferee]: Okay.
>
> C[laimant]: So I do, I do have the hard copies.
>
> R[eferee]: Well, you can't, again, you shouldn't even be testifying from that because they're not in the record. So saying that you have hard copies isn't helping, helping me

---

beginning of the testimony. The tribunal may require that the documents be delivered up to 5 days in advance of the hearing. See § 101.131(h) (relating to conduct of a telephone hearing).

34 Pa. Code § 101.131(h) provides:

A document not provided as required by § 101.130(e) (relating to notice of testimony by telephone and use of documents) may not be admitted nor testimony given or taken from it unless consent has been requested from and given by all parties. Testimony taken or given in violation of this subsection will be excluded from consideration, as will the document.

here.  All right.  So you're saying that you were discharged by Mr. Rapp?

C[laimant]:  Yes, I was.

(*Id.* at 13.)  The Referee allowed both Claimant and Employer to testify about texts sent, but the Referee also acknowledged that both parties failed to comply with the regulations about telephone hearings in the Notice of Hearing.  (*Id.*)  Claimant emailed the Referee on June 14, 2017, at 2:13 p.m., requesting that the Referee "re-open" her case.  (C.R., Item No. 10.)  She explained that she emailed her evidence in a timely manner, but in the incorrect format.  (*Id.*)

The Notice of Hearing put Claimant on notice that if she wished to offer testimony based on evidence or with the aid of a document not previously distributed to the parties, she could only do so (1) upon consent of the party or (2) if she delivered the document to the Referee and opposing party five days prior to trial. During the hearing and in her subsequent email to the Referee, Claimant admitted that she made a mistake when she sent the evidence to the Referee's office. Claimant's failure to send the evidence in a timely manner did not entitle her to a new hearing.  For these reasons, the Board did not err in denying Claimant's request.

Next, we address Claimant's argument that the Referee violated her due process rights by failing to advise Claimant of her ability to participate in person at a hearing.  On May 25, 2017, Claimant emailed the Referee requesting a continuance. (C.R., Item No. 8.)  She also requested a telephone conference because of her sexual harassment lawsuit against Employer.  (*Id.*)  She wrote, "[p]lease consider my request as I can not [sic] have any face[-]to[-]face interaction with . . . Rapp due to his devious actions of abuse and harassment." (*Id.*) Claimant's husband also sent a letter to the Referee, referencing the sexual harassment lawsuit and

describing Claimant's health state as a result of dealing with Rapp. (*Id.*) The Referee granted these requests. (*Id.*)

Claimant's argument is unclear. The Notice of Hearing initially sent to Claimant informed her that the hearing would be held in-person. Claimant instead requested a telephone conference, because she did not want to have a "face[-]to[-]face interaction" with Rapp. In this respect, Claimant waived any right to an in-person hearing. We conclude, therefore, that Claimant's argument is without merit

Next, we address Claimant's argument that the Referee's favoritism towards Employer during the hearing violated her right to a fair hearing and prejudiced her. Claimant argues that she was prejudiced because the Referee accepted Employer's verbal testimony without challenging his statements and refused to guide her as a *pro se* party. Claimant further argues that the Board failed to acknowledge the Referee's bias and prejudice.

Claimant points out that the Referee defined the meaning of a witness as "someone who has first-hand knowledge about the events leading up to your separation," before questioning whether Hengst had such first-hand knowledge. (C.R., Item No. 9 at 2.) Claimant argues that the Referee began speaking "arbitrar[ily] and capricious[ly]" and that the Referee's demeanor changed when speaking to Claimant. (Claimant's Br. at 7.) Claimant argues that the Referee was mild-mannered in her questioning of Employer, did not challenge Employer's statements, and did not "get loud" with Employer. (*Id.* at 7A.) Claimant asserts that the Referee did not "state to [E]mployer what [Employer] will and what [Employer] will not do at her hearing." (*Id.*) Claimant contends that she was prejudiced because

12

the Referee challenged her statements and tried to confuse her. Claimant characterizes the Referee's questioning of her as "badgering." (*Id.*)

After reviewing the transcript, this Court concludes that the Referee did not act in a manner that exhibited bias or prejudice towards Claimant. Claimant is correct that a referee is required to assist "*pro se* claimants in developing the facts necessary for a decision." *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008). "[T]he referee [, however,] is not required to become and should not assume the role of a claimant's advocate." *McFadden v. Unemployment Comp. Bd. of Review*, 806 A.2d 955, 958 (Pa. Cmwlth. 2002). The Referee attempted to help Claimant develop facts, but Claimant sometimes discussed her own personal opinion. When questioning Employer, Claimant also failed to ask questions. The Referee explained the law to both parties. Furthermore, before allowing Hengst to testify, the Referee explained to Claimant the function of a witness to Claimant. There is no evidence that the Referee acted unfairly towards Claimant. For these reasons, the Referee did not deny Claimant a fair hearing.

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

13

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jodi A. Fowler,                           :
                    Petitioner      :
                               :
          v.                              :      No. 1269 C.D. 2017
                               :
Unemployment Compensation     :
Board of Review,              :
                  Respondent      :

# **O R D E R**

AND NOW, this 15th day of May, 2018, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge